*IN THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF DELAWARE*

| | | |
|---|---|---|
| *METATASTE GENERAL TRADING LLC,* | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | *C.A. No. _____* |
| *v.* | ) | |
| | ) | |
| *INDOORATLAS USA, INC.,* | ) | *DEMAND FOR JURY TRIAL* |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |



*Figure 1 – Defendant's multistory location tracking software.*

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

## *ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT*

1.     *Metataste General Trading LLC ("Metataste" or "Plaintiff"), by and through its counsel, hereby brings this action for patent infringement against IndoorAtlas USA, Inc.,  ("IndoorAtlas" or "Defendant") alleging infringement of the following validly issued patent (the "Patent-in-Suit"): U.S. Patent No. 9,609,487, titled "System for providing location relevant information" (the '487 Patent), attached hereto as Exhibit A.*

## *NATURE OF THE ACTION*

2.     *This is an action for patent infringement arising under the United States Patent Act 35 U.S.C. §§ 1 et seq., including 35 U.S.C. § 271.*

## *PARTIES*

3.     *Plaintiff Metataste General Trading LLC is a company established in the United Arab Emirates with its principal place of business at 661, Dubai, United Arab Emirates.*

4.     *On information and belief, Defendant IndoorAtlas USA, Inc. is a company established in Delaware and may be served through its registered agent Cogency Global Inc. at 850 New Burton Rd, Suite 201, Dover, DE, 19904.*

## *JURISDICTION AND VENUE*

5.     *This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 et seq. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.*

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

6.      The Court has personal jurisdiction over Defendant for the following reasons: (1) Defendant is present within or has minimum contacts within the State of Delaware and the district of Delaware; (2) Defendant has purposefully availed itself of the privileges of conducting business in the State of Delaware and in this district; (3) Defendant has sought protection and benefit from the laws of the State of Delaware; (4) Defendant regularly conducts business within the State of Delaware and within this district, and Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Delaware and in this district; and (5) Defendant is incorporated in Delaware and has purposely availed itself of the privileges and benefits of the laws of the State of Delaware.

7.      Defendant, directly and/or through intermediaries, ships, distributes, uses, offers for sale, sells, and/or advertises products and services in the United States, the State of Delaware, and the District of Delaware including but not limited to the products which contain the infringing '487 Patent systems and methods as detailed below. Upon information and belief, Defendant has committed patent infringement in the State of Delaware and in this district; Defendant solicits and has solicited customers in the State of Delaware and in this district; and Defendant has paying customers who are residents of the State of Delaware and this district and who each use and have used the Defendant's products and services in the State of Delaware and in this district.

8.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

1400(b). *Defendant is incorporated in this district, has transacted business in this district, and has directly and/or indirectly committed acts of patent infringement in this district.*

<u>ACCUSED PRODUCTS</u>

9.    *The Patent-in-Suit teaches systems and methods for providing location relevant information to users of a plurality of mobile devices within a multistory building.*

10.    *Defendant makes, uses, offers for sale and sells in the U.S. products, systems, and/or services that infringe the Patent-in-Suit, including, but not limited to its IndoorAtlas sensor fusion stack positioning technology (the "Accused Products").*

## ***BACKGROUND***

11.    *Defendant IndoorAtlas represents itself as "the indoor positioning platform for mobile applications." See Ex. 1 (available at https://www.indooratlas.com/about-us/) (last visited July 11, 2019).*

12.    *Defendant IndoorAtlas "want[s] everyone to be able to discover the indoor world around them, wherever they are." See Ex. 1. "We do this by making our patented technology available to every app developer, no matter what size, market or interest." See Ex. 1.*

13.    *The IndoorAtlas technology also supports beacons. "For IndoorAtlas, and especially iOS, beacons provide fast time-to-first-fix performance and aid in detecting floor and indoor-outdoor transitions." See Ex. 2 (available at*

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

*https://www.indooratlas.com/positioning-technology/) (last visited July 11, 2019).*

### COUNT I
#### (Infringement of U.S. Patent No. 9,609,487)

14.    *Plaintiff incorporates by reference the allegations of paragraphs 1-13, the same as if set forth herein.*

15.    *The '487 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on March 28, 2017. The '487 Patent is presumed valid and enforceable. See 35 U.S.C. § 282.*

16.    *Plaintiff is the owner by assignment of the '487 patent and possesses all rights of recovery under the '487 patent, including the exclusive right enforce the '487 patent and pursue lawsuits against infringers.*

17.    *Without a license or permission from Plaintiff, Defendant has infringed and continues to infringe on one or more claims of the '487 Patent— directly, contributorily, and/or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the patented '487 systems and methods, in violation of 35 U.S.C. § 271.*

#### Direct Infringement

18.    *Defendant has been and now is directly infringing by, among other things, practicing all of the steps of the '487 Patent, for example, through internal use, testing, quality assurance, research and development, and troubleshooting. See Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 775 (Fed. Cir. 1993); see also 35 U.S.C. § 271 (2006). For instance, Defendant has directly infringed the Patent-in-*

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

*Suit by testing, configuring, and troubleshooting the functionality of its location technology.*

*19.    By way of example, Defendant has infringed and continues to infringe on at least one or more claims, including at least Claim 1 of the '487 Patent which teaches:*

> A system for providing location relevant information to users of a plurality of mobile devices within a multi-storey building, the system comprising:
>
>> a plurality of transmitters located in different locations across multiple floors of the building, each transmitter for transmitting a signal for identifying the location of its associated transmitter, and wherein signals transmitted by transmitters located on the same floor share at least one common transmission parameter and a common floor identification artifact for identifying the floor on which the respective transmitters are located; and
>>
>> software for running on the plurality of mobile devices, the software being operable on each mobile device for:
>>
>> identifying signals received substantially concurrently from two or more of the plurality of transmitters;
>>
>> determining the closest transmitter on the same floor as the mobile device based at least in part on the at least one common transmission parameter and by identifying the floor on which the mobile device is located by selecting the floor associated with the highest number of detected common floor identification artifacts from the signals received from the two or more of the plurality of transmitters; and
>>
>> displaying on the mobile device location relevant information associated with the location of the determined closest transmitter.

*20.    On information and belief, Defendant practices a system (e.g. IndoorAtlas Indoor Positioning system) for providing location relevant information (e.g. location-based navigation information) to users of a plurality of mobile*

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

*devices (mobile phone users) within a multi-story building (e.g., Malls, offices, residential buildings, etc.). See Figures 2 - 5.*

## Hybrid indoor positioning platform

IndoorAtlas enables accurate cross-platform indoor positioning of smartphones by fusing all available information sources, including

- Geomagnetic fingerprint maps
- Pedestrian Dead Reckoning with gyroscope and accelerometer (IMU sensors)
- Wi-Fi signals
- Bluetooth beacons
- Barometric height information

In addition to returning the accurate position within a floor plan, the platform handles automatic floor selection and indoor-outdoor detection.

*Figure 2*
(*available at* https://indooratlas.freshdesk.com/support/solutions/articles/36000079590-
indooratlas-positioning-overview)(accessed July 12, 2019)

The IndoorAtlas' technology fuses WiFi and BLE signals with positioning based on magnetic field variations and pedestrian dead reconing (PDR). The magnetic field variations are most typically observed in buildings with steel frame construction, which enables leveraging magnetic positioning on most modern buildings. However sufficient WiFi or BLE coverage is also crucial for a good positioning experience

*Figure 3*
*(available at*
*https://indooratlas.freshdesk.com/support/solutions/articles/36000035903-is-*
*indooratlas-working-in-all-buildings-)(accessed July 12, 2019)*

Our SDK integrates with your application and the smart device's sensors. Each data source—whether magnetic, beacon, Wi-Fi, or any other sensor—is conditionally observed. This environment information together with the inferred relative movement of the user is then compared against the digital maps, produced by machine learning algorithms on our cloud platform, to obtain the user's precise location. How much each data source contributes

*Figure 4*
*(available at* https://www.indooratlas.com/positioning-technology/)(accessed July

7

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

*12, 2019)*



*Figure 5*
*(available at https://www.indooratlas.com/)(accessed July 12, 2019)*

21.     On information and belief, Defendant's system comprises a plurality
of transmitters (e.g. beacons) located in different locations across multiple floors
of the building (e.g. as shown in Figures 4 and 5 below), each transmitter (e.g.
beacon) for transmitting a signal for identifying the location of its associated
transmitter (e.g. each beacon transmits a signal for identifying its relevant
location), and wherein signals transmitted by transmitters located on the same
floor share at least one common transmission parameter (e.g. beacons located on
the same floor transmit signals of the same strength) and a common floor
identification artifact (e.g. floor level associated with each beacon) for identifying
the floor on which the respective transmitters are located (e.g. floor 1, floor 2 etc.
is used for identifying the beacon installed in the respective floor). See, Figures 6-

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

8, *(available at https://docs.indooratlas.com/MappingGuideEN.pdf)(accessed July 12, 2019).*

- Cover the area as evenly as possible with the beacons.
  - Place beacons on the outer edge of the floor. This ensures that most of the time the device being positioned is inside a triangle formed by a few beacons, resulting in good first fix accuracy.
  - For fast and accurate first fix on iOS, we recommend one beacon every 15 - 30m
- Good places for beacons
  - Pillars
  - Walls
  - On top of lighting (check that beacons are heard)

*Figure 6*

Example Beacon Installation

The figure below highlights the idea: *Place beacons on the outer edge of the floor.* This ensures that most of the time the device being positioned is inside a triangle formed by a few beacons, resulting in good first fix accuracy.



*Figure 7*

## Beacons near floor transitions

Installing beacons near floor transitions often makes them heard on multiple floor levels. This makes floor detection less reliable. Therefore, as mentioned earlier, installing beacons e.g. to the ceiling of open multi-floor areas is not recommended. Instead, try to install beacons near floor transitions so that they discriminate between floors as much as possible. In other words, try to ensure that the beacons are heard on one floor but not on the others. Use pillars and other physical structures to control where the beacons are heard.

*Figure 8*

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

22.   *The Defendant's system (IndoorAtlas Indoor Positioning) further comprises of software (e.g. IndoorAtlas Indoor Positioning App) for running on the plurality of mobile devices (e.g. smart phone of the users). See Figures 9-10.*

The process of enabling a space for indoor positioning with the IndoorAtlas technology involves a few simple steps. After completing these the space becomes positioning enabled, meaning that if one uses a smartphone app with our technology, the positioning works in the app. This process of enabling a space for positioning is called fingerprinting or mapping.

Figure 9
(*available at* https://www.indooratlas.com/2018/12/12/mapping-the-unmappable-how-we-enabled-positioning-at-the-redi-shopping-mall-in-less-than-8-hours/)(accessed July 212, 2019).

Our SDK integrates with your application and the smart device's sensors. Each data source—whether magnetic, beacon, Wi-Fi, or any other sensor—is conditionally observed. This environment information together with the inferred relative movement of the user is then compared against the digital maps, produced by machine learning algorithms on our cloud platform, to obtain the user's precise location. How much each data source contributes

Figure 10
(*available at* https://www.indooratlas.com/positioning-technology/)(accessed July 212, 2019).

23.   *On information and belief, the software (e.g. IndoorAtlas Indoor Positioning App) is enabled for identifying signals received substantially concurrently from two or more of the plurality of transmitters (e.g. as shown in Figure 11 below, green indicates identifying signals received from plurality of beacons). See Figures 11, 12 (available at https://indooratlas.freshdesk.com/support/solutions/articles/36000050544-improving-beacon-environment-quality)(accessed July 12, 2019).*

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

Interpreting colors:

- Green areas mean that a good first fix can be determined.
- Yellow areas in this image indicate that an approximate first fix can be determined in those areas.
- Red indicates no beacon coverage and green indicates good coverage.

Figure 11



Figure 12

24.     On information and belief, Defendant's software is configured for determining the closest transmitter  on the same floor as the mobile device (e.g. nearest beacon relative to the user's mobile device) based at least in part on the at least one common transmission parameter (e.g. beacon signal strength) and by identifying the floor on which the mobile device is located by selecting the floor associated with the highest number of detected common floor identification artifacts from the signals received from the two or more of the plurality of transmitters (e.g. as shown in the below Figures, floor 1 or floor 2, etc., is detected

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

*based on highest number of signals received from multiple beacons of the same floor on which user is walking). See Figures 13–*

Depending on the case, beacon should be heard 15 - 30 meters away unobstructed
  ○  Beacon RSSI (signal strength) should be > -75 when standing nearby the beacon

If this kind of beacon is installed on the ceiling, its beam is directed downwards and it's heard only in a limited area underneath and in close proximity (5-10 meter radius)

*Figure 13*
(*available at* https://docs.indooratlast.com/MappingGuideEN.pdf)(accessed July 12, 2019)

accurate on-time initialization coordinate to the SDK. This might be relevant, for example when a user passes a doorway which you can identify from a beacon signal.

*Figure 14*
(*available at* https://docs.indooratlast.com/MappingGuideEN.pdf)(accessed July 12, 2019)

While the magnetic field tracking provides the accuracy to IndoorAtlas' indoor positioning system, Wi-Fi provides fast time-to-first-fix performance and aid in detecting floor and indoor-outdoor transitions. We support all Wi-Fi networks which can be communicated with by a modern smartphone.

*Figure 15*
(*available at* https://www.indooratlas.com/positioning-technology/)(accessed July 12, 2019).

25.    The software (e.g. IndoorAtlas Indoor Position App) is enabled for displaying on the mobile device location relevant information associated with the location of the determined closest transmitter (e.g. displaying mobile device location in relevance to the nearest beacon). See Figure 16.

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL



*Figure 16*

(*available at* https://indooratlas.freshdesk.com/support/solutions/articles/36000079590-
indooratlas-positioning-overview)(accessed July 12, 2019).

### *Induced Infringement*

26.     Defendant has been and now is indirectly infringing by way of
inducing infringement by others and/or contributing to the infringement by others
of the '487 Patent in the State of Delaware, in this judicial District, and elsewhere
in the United States, by, among other things, making, using, offering for sale,
and/or selling, without license or authority, products incorporating the accused
technology. End users include, for example, Defendant's customers, third parties
interacting with the accused technology, and other third-parties.

27.     Defendant took active steps to induce infringement, such as
advertising an infringing use, which supports a finding of an intention. *See Metro-
Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) ("[I]t may
be presumed from distribution of an article in commerce that the distributor

intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement"). For example, Defendant encourages visitors to "[b]uild seamless location based experiences today," inviting the consumer public to "get started" with the infringing with the infringing system for providing location relevant information. *See* Ex. 3. *(available at* https://www.indooratlas.com/) *(accessed July 12, 2019).*

28.   The allegations herein support a finding that Defendant induced infringement of the '487 Patent. *See Power Integrations v. Fairchild Semiconductor*, 843 F.3d 1315, 1335 (Fed. Cir. 2016) ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement [e.g., advertisements, user manuals] directed to a class of direct infringers [e.g., customers, end users] without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material.").

### Contributory Infringement

29.   On information and belief, Defendant contributorily infringes on Plaintiff's '487 Patent. Defendant knew or should have known, at the very least as a result of its freedom to operate analyses, that third parties, such as its customers, would infringe the '487 Patent.

30.   On information and belief, Defendant's implementation of the accused functionality has no substantial non-infringing uses. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321 (Fed. Cir. 2009) (holding that the "substantial non-infringing use" element of a contributory infringement claim

*applies to an infringing feature or component, and that an "infringing feature" of a product does not escape liability simply because the product as a whole has other non-infringing uses).*

### Willful Infringement

31.    *On information and belief, the infringement of the '487 Patent by Defendant has been and continues to be willful. Defendant has had actual knowledge of Plaintiff's rights in the '487 Patent and details of Defendant's infringement based on at least the filing and service of this complaint. Additionally, Defendant had knowledge of the '487 Patent and its infringement in the course of Defendant's due diligence and freedom to operate analyses.*

### Plaintiff Suffered Damages

32.    *Defendant's acts of infringement of the '487 Patent have caused damage to Plaintiff, and Plaintiff is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Plaintiff's exclusive rights under the '487 Patent will continue to damage Plaintiff causing it irreparable harm for which there is no adequate remedy at law, warranting an injunction from the Court.*

## REQUEST FOR RELIEF

33.    *Plaintiff incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:*

(a)    *enter a judgment that Defendant has directly infringed, contributorily*

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

infringed, and/or induced infringement of one or more claims of each of the '487 Patent;

(b)     enter a judgment awarding Plaintiff all damages adequate to compensate it for Defendant's infringement of, direct or contributory, or inducement to infringe, the including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)     enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the '487 Patent;

(d)     issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, its directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the '487 Patent;

(e)     enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)     award Plaintiff all other relief that the Court may deem just and proper.

Dated: July 24, 2019                    Respectfully submitted,


                                        STAMOULIS & WEINBLATT LLC

                                        /s/Stamatios Stamoulis
                                        Stamatios Stamoulis #4606
                                           stamoulis@swdelaw.com
                                        Richard C. Weinblatt #5080
                                           weinblatt@swdelaw.com
                                        800 N. West Street, Third Floor
                                        Wilmington, DE 19801
                                        (302) 999-1540

                                        M. GRANT MCARTHUR (SBN 321959)
                                        gmcarthur@budolaw.com
                                        KIRK. J. ANDERSON (SBN 289043)
                                        kanderson@budolaw.com
                                        BUDO LAW, LLP
                                        5610 Ward Rd., Suite #300
                                        Arvada, CO 80002
                                        (720) 225-9440 (Phone)
                                        (720) 225-9331 (Fax)


                                        **Attorney(s) for Metataste General
                                        Trading LLC**

COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL